**RINGSTREET NORTHCREST, INC., Appellant,**

v.

**Robert BISANZ, Terrance Troy, and Real Estate Equities Investment Fund— 1981, Respondents.**

**No. WD 53189.**

Missouri Court of Appeals,
Western District.

June 17, 1997.

Motion for Rehearing and/or Transfer to
Supreme Court Denied July 29, 1997.

Application to Transfer Denied
Sept. 30, 1997.

William Modrcin, Jr., Kansas City, for Appellant.

John McFarland, Kansas City, for Respondent.

SPINDEN, Judge.

Ringstreet Northcrest, Inc., appeals the circuit court's summary judgment for Real Estate Equities Investment Fund—1981 and its general partners, Robert Bisanz and Terrance Troy, in Ringstreet Northcrest's lawsuit for penalties under § 443.130, RSMo 1994. Ringstreet Northcrest contends that Real Estate Equities unlawfully refused to release a deed of trust securing a note. The circuit court found that Ringstreet Northcrest's failure to comply strictly with statutory requirements regarding tender precluded Ringstreet Northcrest's obtaining the statutory penalty, and it entered summary judgment for Real Estate Equities. Summary judgment was improper, so we reverse judgment and remand the case for further proceedings.

We set out the underlying facts to this dispute in *Ringstreet Northcrest, Inc. v. Bi-sanz*, 890 S.W.2d 713 (Mo.App.1995). The issue in this case is whether Real Estate Equities isliable for penalties because of its refusal to release a wrap-around deed of trust securing a wrap-around note.

On June 19, 1989, Ringstreet Northcrest sent a check to Real Estate Equities for $3960.62 to pay the wrap-around note in full. It requested release of the wrap-around deed of trust and that the note be returned marked "paid in full." Three days later, Real Estate Equities returned the check to Ringstreet Northcrest. Real Estate Equities' attorney explained:

The wrap-around deed of trust secures not only the balances of the two underlying deeds of trust, but also the agreement of Ringstreet Northcrest, Inc., and Mark and Eric Vianello to share with Real Estate Equities Investment Fund—1981 one-half of any discount received on any refinancing of the underlying debt on the Northcrest property. That it secures this additional contract is beyond dispute[.]

It is the view of Real Estate Equities Investment Fund—1981 that the provisions relating to the deed of trust release which would be given on an assumption of the two underlying deeds of trust certainly were intended to eliminate the wrap-around deed of trust as security for any monetary amount owing on the wrap-around promissory note. Accordingly, Real Estate Equities Investment Fund—1981 is more than willing ... to return the wrap-around promissory note marked "cancelled", and to file a release which makes it quite clear that the wrap-around deed of trust no longer remains as security for such amounts.

On August 31, 1989, Ringstreet Northcrest satisfied the note by assuming all outstanding obligations secured by the underlying senior deeds of trust. On November 3, 1989, Ringstreet Northcrest again sent to Real Estate Equities the same check for $3962.62 and another check for $100 to cover any additional accrued interest from May to November. "Interest" was written on the check's memorandum line. Ringstreet Northcrest again requested release of the wrap-around deed of trust.

Real Estate Equities issued a partial deed of release to Ringstreet Northcrest dated

December 21, 1989, which acknowledged Ringstreet Northcrest's satisfaction of the wraparound note, but reiterated its contention that the wrap-around deed of trust was to continue as security for the discount agreement.

Ringstreet Northcrest contends that Real Estate Equities is liable for penalties under § 443.130, RSMo 1994, which says:

> If any such person receiving satisfaction, does not, within thirty days after request and tender of costs, acknowledge satisfaction on the margin of the record, or deliver to the person making satisfaction a sufficient deed of release, he shall forfeit to the party aggrieved ten percent upon the amount of the mortgage or deed of trust money, absolutely, and any other damages he may be able to prove he has sustained, to be recovered in any court of competent jurisdiction.

Because the statute is penal in nature, we must construe it strictly. *Trovillion v. Chemical Bank,* 916 S.W.2d 863, 865 (Mo. App.1996). The statute does not define "tender of costs."[1]

We have defined tender as "an offer of money; the act by which one produces and offers to a person holding a claim or demand against him the amount of money he considers and admits to be due, in satisfaction of such claims or demand without any stipulation or condition." *Id.*

> Generally, conditioning a proposed tender upon a release of all claims or any other reciprocal action, including requiring a creditor to abandon his or her position, invalidates the tender.... However, where a tender in full of an obligation is made, the debtor has the right to demand the surrender of all securities and collateral, as defined by the obligation, which the creditor holds.

*Curnutt v. Scott Melvin Transport, Inc.,* 903 S.W.2d 184, 190 (Mo.App.1995).

The parties concentrate their quarrel on the adequacy of Ringstreet Northcrest's tender—whether its checks and accompanying letter constituted "tender of costs" under § 443.130. This dispute misses the larger issue, noted in our previous opinion,[2] as to what would satisfy the termination provisions of the wrap-around deed of trust. Real Estate Equities resisted Ringstreet Northcrest's request for release of the deed of trust on the ground that it also secured the parties' discount agreement. This apparently prompted Real Estate Equities to change the wording of the release on the back of Ringstreet Northcrest's check from "complete satisfaction of Borrower's Obligations under Wrap Around Promissory Note and Wrap Around Deed of Trust" to "partial satisfaction" and to issue a partial deed of release. Ringstreet Northcrest contests and insists that no obligations affecting release of the wrap-around deed of trust remain unsatisfied.

Hence, because tender must be unconditional and must not require the creditor to abandon its lawful positions, determination of the meaning and effect of the disputed termination provisions of the wrap-around deed of trust is a prerequisite to answering whether tender was sufficient to satisfy the statute. As we previously ruled, those provisions are ambiguous and cannot be resolved without resolution of material fact issues.[3] For that reason, we again reverse summary judgment and remand the case for further proceedings.

LOWENSTEIN, P.J., and HOWARD, J., concur.

---

1. Real Estate Equities contends for application of the 1996 amendment which requires a mortgagor to request release of the deed in the form of a demand letter to the mortgagee, along with good evidence that the expense of filing the release has been advanced to the mortgagee. Section 443.130(2), RSMo Supp.1996. Real Estate Equities argues that the amendment should be applied retroactively because the change is proce-

dural. We disagree. The effect of retroactive application would be elimination of a party's substantive right. Retroactive application is not appropriate.

2. 890 S.W.2d at 719.

3. *Id.*